**In the Matter of Ronald J. KESSNICK, Debtor.**

**BETHESDA HOSPITAL, Plaintiff,**

v.

**Ronald KESSNICK, Defendant.**

**Bankruptcy No. 93–11212.**
**Adv. No. 93–1068.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Dec. 9, 1993.

C. Edward Noe, Immerman & Tobin Co., L.P.A., Cincinnati, OH, for plaintiff.

John W. Rose, Cincinnati, OH, for defendant.

Norman Slutsky, Cincinnati, OH.

Neal Weill, Cincinnati, OH.

## JUDGMENT ENTRY

J. VINCENT AUG, Jr., Bankruptcy Judge.

This adversary proceeding is before the Court pursuant to a complaint filed by Bethesda Hospital under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). The complaint alleges that certain payments made to the Debtor by Community Mutual Insurance Company belonged to Bethesda Hospital ("the hospital") and that the debtor intentionally defrauded the hospital by using the money for his own purposes rather than turning the money over to the hospital as required by the Claim Payment Authorization the Debtor signed when he admitted his daughter for hospitalization.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

A trial was conducted on November 2, 1993. At the conclusion of the trial, the Court issued a conditional opinion from the bench (copy of transcript attached) in which it stated that while it believed the hospital had made out a case for nondischargeability, its decision was subject to change depending on what was shown when the plaintiff hospital submitted as evidence a copy of the Explanation of Benefits that had been sent to Mr. Kessnick along with the errant check. The Court was of the belief that since Mr. Kessnick had testified that he thought the check was his and was issued to him to reimburse him for certain medical services provided as a result of a shoulder injury, the submission of the Explanation of Benefits would help clarify his intent upon receipt of the check. It was believed by hospital witnesses that the Explanation of Benefits would identify clearly at first glance the name of the patient on whose behalf the check was issued.

The record was held open for submission of the Explanation of Benefits form and on November 3, 1993, the Court received a letter from plaintiff's counsel enclosing "two exemplars of the Explanation of Benefits forms" that are sent out by Community Mutual when it issues a check. The letter informed the Court that the actual forms mailed to Mr. Kessnick could not be recreated. The forms enclosed as exemplars indicated that in the upper left hand corner was a line with the word "Customer." The representative from Community Mutual indicated that Mr. Kessnick's name would appear after this line. The salutation on the form would have read "Dear Mr. Kessnick." Below the salutation was the sentence "This is a general explanation of the claims processed by Community Mutual Blue Cross and Blue Shield." Underneath this line were a number of categories, the first of which contained the heading "Patient Name." It was under this heading that the name of Mr. Kessnick's daughter, Joanna Kessnick, would have appeared. The patient's name did not appear prominently at the top of the form as the Court assumed it would.

Given that one gross error in the calculation of Joanna Kessnick's bill was admitted by the plaintiff, that the plaintiff further acknowledged that it has had a problem for years in receiving direct payments of major medical benefits from insurance companies where there has been an Assignment of Claim, and that the Explanation of Benefits form tendered as evidence did not prominently display the name of the patient, we hold that Bethesda Hospital has not met its burden of proof by a preponderance of the evidence. While we acknowledge that this may have been a close case, we believe a finding of fraudulent intent would be inappropriate given the minimal evidence presented on that issue. Further, we agree with Mr. Kessnick's counsel that there has been no showing under § 523(a)(2) of actual fraud or of the use of a false financial statement, nor has there been a showing of fraud or embezzlement in a fiduciary capacity as required under § 523(a)(4).

Accordingly, the debt of Richard Kessnick to Bethesda Hospital in the amount of $6,175 arising from the hospitalization of Mr. Kessnick's daughter Joanna, is hereby DISCHARGED.

IT IS SO ORDERED.

## APPENDIX

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

Bethesda Hospital, Plaintiff,

v.

Ronald Kessnick, Defendant.

## COURT'S RULING

Case No. 93-1068

## APPEARANCES

On behalf of Plaintiff:
EDWARD NOE, ESQ.
Immerman & Tobin Co., L.P.A.
910 Atlas Bank Bldg.

524 Walnut Street
Cincinnati, Ohio 45202
On behalf of Defendant:
JOHN ROSE, ESQ.
711 Provident Bank Bldg.
632 Vine Street
Cincinnati, Ohio 45202

BE IT REMEMBERED that the above-entitled hearing came on to be heard before the Honorable Vincent Aug on the 2nd day of November, 1993.

TRI–COUNTY REPORTING AND VIDEO-
TAPE SERVICE
95 S. FOURTH STREET
BATAVIA, OH 45103
(513) 732–1477

THE COURT: All right. Well, you know, this is a difficult case. Let me ask one question about evidence. I know we've talked about this but I'm not certain that it is in evidence. Is the explanation of benefits a matter of record in this case?

MR. NOE: No, it is not.

THE COURT: That was attached to the check?

MR. NOE: No.

THE COURT: Does anyone wish to place it in evidence or can it be?

MR. NOE: If I could get a copy, it can be reproduced, Your Honor.

THE COURT: Well, the reason I ask is that I'm personally familiar with the structure of those documents simply because I happen to have the same insurance carrier. I'm also familiar with the difficulties in understanding them that some laymen have but I don't want my knowledge of what that looks like to be evidence in this case and I think—

MR. NOE: Your Honor, I would certainly like to submit it. Had I been able to obtain that from Blue Cross & Blue Shield, I certainly would have submitted it. I was not

able to. They told me that it could be reproduced and—

THE COURT: Yeah. Well, I would like to place it in evidence and the reason is that my experience which, unfortunately, is rather extensive with those documents, tells me that regardless of the difficulties in understanding the numbers, that very clearly at the top of those documents, it describes who the patient is up on the right hand side. ·That's my experience. Now, if you have trouble missing who the patient is, you may have trouble understanding what happened and what was covered and what wasn't covered but it's very easy to see what it's about and I hate to say that my knowledge about that is affecting my decision here and I believe that should be made a matter of record.

MR. NOE: I will advise the Court.

THE COURT: Having said that, though, I have an opinion in this matter and the opinion can change from the explanation of benefits can't be produced and can't be put into evidence but I believe in this case that the hospital has made out a case here for nondischargability. It's a difficult case and a close case but I don't have any background in any context that's been given to me that would lead me to the conclusion that Mr. Kessnick was all that confused at the time so that his confusion would, in essence, sort of obviate the necessary for any other defense.

In this case, there may has been some confusion about the numbers but there isn't any confusion about Mr. Kessnick's personal circumstances: his economic circumstances were very stressed at the time; he had major debts and that he was going to use that check to cover these debts as fast as possible and let the consequences of that be cleaned up at a future time either through increased earnings or through something else, but there was no question that that check was used to take care of an immediate problem and that makes that conversion willful.

Now, the maliciousness of it is something that's a little difficult to determine and it's difficult to put that phrase on · a course of conduct where things are in a state of flux but there isn't any question that Mr. Kess-

nick was not out-of-pocket on his daughter's hospitalization at all so there was no catch-up to be done here and there was no question that if he had spent five seconds, in my mind, of looking at this form, he could have identified who the patient was, at least, and would have known that he was $5700 to the good on this and $5700 ahead of the hospital on this matter. I think under those circumstances, it's incumbent upon any person in any situation to at least make contact and try to identify the source of the funds and try to identify whether or not that some sort of mistake has been made. If you try and you can't get an answer, that places you in a little different position but in this case, Mr. Kessnick did not want to know the answer to that question. He wanted to pay some bills that were pressing him very badly and that was the wrong move to make and it was a conversion. It was willful and it was, you know, it was malicious enough, I believe, to be an undischargable debt.

Now, as I've said, I'm convinced that the evidence is there on the present circumstances and the present state of mind that Mr. Kessnick had when he received that $5700 check but I would like in evidence that statement of benefits which I believe will show—if it's laid out the way thousands of these things that I've looked at are laid out— that will show the patient's name at the top and to me that's an important fact. If, indeed, there were some change or if the form is different or it looks different than I think it's going to look, I'm going to retract some or all of what I've said here today but I believe Mr. Kessnick, that he threw it away, but I don't believe that the hospital, the hospital's procedures were defective if, indeed, the patient's name was prominently · displayed on that explanation of benefits. In this case, that would have been all it would have taken to direct Mr. Kessnick's attention to the fact that he was $5700 ahead of the hospital on his daughter's hospitalization and should inquire about why that is. That would be enough so I'm going to hold the record open in this case for a few days to see if that can be obtained. If not, I'll have to sit down and contact you by telephone and say, "Gee, I've got to think this thing through again." Unfortunately, I'm working with

something that is not—I'm not capable of taking judicial notice of this. This is, unfortunately, something that's born out of my own experience looking at explanations of benefits.

I also think that the hospital and the insurance company shouldn't be congratulated over the way these monies were handled and I can see an institutional problem that's going to create all sorts of difficulties. The language, for example, in this assignment is very similar to the language in the Kraft assignment and it doesn't say that you're supposed to turn over monies that you receive to the hospital. It just says they're entitled to be paid directly and, Mr. Rose, in that regard, your case is very much like the Kraft case but that doesn't help me decide the ultimate issue which comes down to what is in a person's mind when they receive this chunk of money and these cases will always boil down to what a reasonable person ought to have known and how a reasonable person ought to have proceeded.

Unfortunately, those moments are always surrounded with a great deal of background information, other hospitalizations, other expenses and in this case, I think the evidence shows that there weren't so many complications that this check wouldn't stand out and stick out like a sore thumb and be identified sufficiently as being for the daughter's hospitalization so that's where my decision lies but there is that one critical piece of paper that I would want to attach to a decision, all right?

MR. NOE: I'll advise the Court.

THE COURT: All right. Thank you. We're adjourned.

CERTIFICATE

STATE OF KENTUCKY:

SS

COUNTY OF CAMPBELL:

I, Amy Blosser, contract court reporter for the United States District Court, do hereby certify that the foregoing transcript was by me duly taken in stenotype and thereafter transcribed into typewriting by computer un-der my supervision, and that the same is true and correct in all respects as transcribed from my stenographic notes.

I further certify that I am not counsel, attorney, relative or employee of any of the parties hereto, or in any way interested in the within action.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial seal on this 11th day of November, 1993.

My commission expires
August 5, 1994

    /s/ Amy Blosser
    Amy Blosser
    /s/ Notary Public—State of Kentucky